WESTON ROWLAND SBN  327599
Law Office of Weston Rowland
2708 3rd St. #3
Santa Monica, CA 90405
626-344-9587
e. rowland.weston@gmail.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ADAM BURTON SMITH,<br><br>  PLAINTIFF,<br><br>  v.<br><br>CITY OF LOS ANGELES, JAMES MCDONNELL, LAPD CHIEF, SUED IN HIS OFFICIAL CAPACITY, SERGEANT DENNIS CLARK REYES (BADGE NO. 38837); SENIOR LEAD OFFICER SUCHA SINGH (BADGE NO. 32032); AND DOES 1–20, INCLUSIVE, DEFENDANTS.<br><br>  DEFENDANTS. | CASE NO.: 2:26-CV-01595<br><br>COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF<br><br>42 U.S.C. § 1983; FIRST, FOURTH, AND FOURTEENTH AMENDMENTS: VIOLATION OF FIRST AMENDMENT; FIRST AMENDMENT RETALIATION; UNLAWFUL SEIZURE / FALSE ARREST; EXCESSIVE FORCE; CALIFORNIA CONSTITUTION, ARTICLE I, §§ 2, 7; CALIFORNIA CIVIL CODE § 52.1 (BANE ACT); FALSE IMPRISONMENT; FALSE ARREST WITHOUT A WARRANT BY PEACE OFFICER; BATTERY; ASSAULT<br><br>DEMAND FOR JURY TRIAL |

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1

**JURISDICTION AND VENUE**

1.      This is an action for declaratory and injunctive relief and damages based on violations by Defendants of rights secured to Plaintiff by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2.      Jurisdiction exists under 28 U.S.C. §§ 1331 and 1343 because this action arises under federal law and is brought pursuant to 42 U.S.C. § 1983.

3.      This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal claims.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in the City and County of Los Angeles, California, within this District.

**INTRODUCTION**

5.      Plaintiff Adam Burton Smith ("Plaintiff" or "Mr. Smith") brings this action against the City of Los Angeles ("City"), the Los Angeles Police Department ("LAPD"), and individual LAPD officers for interfering with and retaliating against his protected First Amendment activity of filming police in a public forum and attending a public City Council committee meeting.

6.      The First Amendment protects the right to record police officers performing their duties in public places, including entrances to government buildings open to the public.

7.      California law further makes clear that recording officers in public does not by itself constitute obstruction, reasonable suspicion to detain, or probable cause to arrest.

8.      Despite these clearly established protections, Defendants arrested Mr. Smith in the entrance area of City Hall moments after he briefly filmed an officer, using a trespass charge as a pretext and preventing him from attending and providing public comment at a scheduled public meeting.

9.     Mr. Smith was then detained for approximately nine to nine-and-a-half hours—until just before midnight—despite the misdemeanor nature of the cited offense despite ample opportunity to cite and release him. No criminal case was ever pursued.

10.     Defendants' conduct violated Mr. Smith's constitutional rights and caused physical injury, emotional distress, fear, and humiliation.

**PARTIES**

**Plaintiff**

11.     **Plaintiff Adam Burton Smith** is, and at all relevant times was, a resident of the City of Santa Monica and County of Los Angeles, California.

**Defendants**

12.     **Defendant City of Los Angeles** is, and at all times relevant was, a municipal entity organized under California law with the capacity to sue and be sued. LAPD is a department and subdivision of the City. The City is liable for the constitutional violations described herein pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), and is additionally liable for state-law claims under respondeat superior. LAPD is a municipal department responsible for policing Los Angeles, including City Hall and Central Division. LAPD establishes and implements the policies, customs, and practices challenged in this Complaint.

13.     **Defendant Jim McDonnell** was, at all times relevant to this action, the LAPD police chief and policymaker for the department. He is sued in his official capacity.

14.     **Defendant Sergeant Dennis Clark Reyes** (Badge No. 38837) is, and at all relevant times was, an LAPD sergeant. He participated in and/or directed Mr. Smith's arrest and detention.

15.     On information and belief, both Sergeant Reyes was familiar with Mr. Smith because he was assigned to the City Hall detail and Mr. Smith regularly attended public hearings at City Hall in his capacity as a police accountability and

civil liberties advocate. Defendant had encountered Mr. Smith on multiple prior occasions during his attendance at City Council and committee meetings, including one of many times Mr. Smith attended City Council with his young children and Sergeant Reyes confronted Mr. Smith, accusing his kids of making too much noise.

16.    **Defendant Senior Lead Officer Sucha Singh** (Badge No. 32032) is, and at all relevant times was, an LAPD officer. He participated in and/or directed Mr. Smith's arrest and detention.

17.    On information and belief, Defendant was familiar with Mr. Smith because he was assigned to the City Hall detail and Mr. Smith regularly attended public hearings at City Hall in his capacity as a police accountability and civil liberties advocate. Officer Singh had also previously harassed Mr. Smith online through social media.

18.    The officers' prior familiarity with Mr. Smith from both in-person encounters at City Hall and online interactions demonstrates that he knew Mr. Smith was an accountability advocate and public meeting attendee who posed no



THE SMITHS — Adam with Adeline, 7, and Otis, 5 — attend a City Council meeting. A county health official says people can enjoy gatherings but also be cautious.

## Spring Omicron wave hits New York harder than L.A.

California faring better than East Coast. Will it last?

BY RONG-GONG LIN II

Los Angeles County is doing significantly better than New York City so far in this latest spring wave of Omicron cases, and officials remain hopeful that California can avoid the significant increases in coronavirus hospitalizations seen on the East Coast.

The New York City health commissioner, Dr. Ashwin Vasan, said Tuesday that the city was entering a high COVID-19 alert level, warning that there is high community spread of the coronavirus and "pressure on the healthcare system is increasing."

By contrast, L.A. County is poised to enter the medium COVID-19 community level this week, and "COVID-19 is not currently straining our healthcare system and our healthcare resources," L.A. County Public Health Director Barbara Ferrer said Tuesday.

Ferrer has urged residents to wear high-quality masks — like KF94, KN95 and N95 respirators — while indoors, get vaccinated and boosted, get tested when feeling sick or potentially exposed to the coronavirus, and prefer to gather in well-ventilated areas, with outdoors offering the lowest risk.

But Ferrer added that she is optimistic that L.A. could potentially avoid reaching a high COVID-19 community level, which [See Coronavirus, B4]

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF
4

credible threat. https://www.latimes.com/california/story/2022-05-18/los-angeles-covid-new-york-city

19. **Defendants DOES 1–20** are LAPD officers, supervisors, jailers, and/or other City employees whose identities are presently unknown. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

20. At all relevant times, each individual Defendant acted under color of law, within the course and scope of their employment, and pursuant to City and LAPD policies, customs, and practices.

**STATEMENT OF FACTS**

**A. The Public Meeting and Plaintiff's Lawful Filming**

21. On May 14, 2025, Plaintiff **Adam Smith** went to Los Angeles City Hall, located at 100 N. Spring Street, Los Angeles, California, to attend the public Housing and Homelessness Committee meeting of the Los Angeles City Council and to provide public comment.

22. City Hall and the area immediately inside its public entrances are public fora open to members of the public attending City business, including public meetings.

23. While within the rotunda of City Hall on his way to the John Ferrero Council Chamber, Plaintiff observed two LAPD officers with which he was familiar standing at or near the third-floor rotunda of City Hall. **Sergeant Dennis Clark Reyes and Senior Lead Officer Sucha Singh.**

24. Plaintiff openly filmed the officers as part of his constitutionally protected activity of documenting the conduct of public officials in a public forum.

25. The right to record police activity in public has long been clearly established in the Ninth Circuit in FORDYCE V. CITY OF SEATTLE and is now the rule in all but one circuit.

26. Plaintiff's filming was peaceful, non-obstructive, and did not interfere in any way with any police activity.

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

27.     Officer Singh acknowledged Mr. Smith's presence in the entrance area of City Hall. Mr. Smith, who was en route to attend a Housing and Homelessness Committee hearing, briefly engaged Officer Singh in conversation and referenced Singh's online harassment of Mr. Smith.

28.     Sergeant Reyes then interrupted and directed Officer Singh to move inside. When Mr. Smith stated he was going to the committee hearing, Sergeant Reyes pointed toward the hearing room and told Mr. Smith to proceed to his hearing. Mr. Smith continued to question Officer Singh about his online conduct while filming.

29.     As Mr. Smith asked questions, he adjusted his camera angle toward Sergeant Reyes. For a fleeting moment—approximately half a second—Plaintiff's camera moved closer to the officer, consistent with a momentary attempt to capture a closer angle while continuing to film.

30.     Sergeant Reyes immediately moved toward Mr. Smith and began physically seizing him—placing hands on Mr. Smith's body and taking control of his movement.

31.     As Sergeant Reyes did so, he said "don't put that in my face"—a command issued simultaneously with the physical seizure, giving Mr. Smith no opportunity to comply.

32.     At no point before Sergeant Reyes placed his hands on Mr. Smith did any officer instruct Mr. Smith to stop filming, to step back, or to lower his camera.

33.     At no time did Plaintiff obstruct, delay, or interfere with any lawful duty of any officer.

34.     Neither officer was engaged in any active investigation, arrest, crowd-control operation, or other critical duty.

35.     At no point did Mr. Smith make physical contact with any officer.

36.     At no point did Mr. Smith make any verbal threat.

37.    Their decision to arrest Mr. Smith immediately, without any warning or opportunity to comply supports the inference that the arrest was pretextual and retaliatory.

**B. The Immediate Arrest and Pretextual Citation**

38.    Plaintiff was seized without warning, handcuffed, and arrested in the City Hall rotunda area.

39.    Plaintiff did not resist arrest, attempt to flee, or pose any threat.

40.    Defendants cited Plaintiff for California Penal Code § 602(j).

41.    The trespass statute cited by Defendants—California Penal Code § 602(j)—prohibits building fires on privately owned land where "No Trespassing" signs are posted at intervals of no greater than one mile along the exterior boundaries. Section 602 requires, among other things, circumstances indicating unlawful entry or remaining without authorization. Plaintiff was lawfully present in City Hall for a public meeting and had apparent lawful business there. Plaintiff had not been instructed to leave by any authorized official, and no surrounding circumstances would have indicated to a reasonable person that Plaintiff lacked lawful business in City Hall.

42.    The statute has no application to the interior of any public government building—let alone the City Hall of the second most populous municipality in the United States. Defendants made no meaningful effort to identify a lawful basis for the arrest and instead seized Mr. Smith first and searched for a justification later.

43.    The selection of a patently inapplicable statute—one concerning setting fires on rural land—suggests that Defendants arrested Mr. Smith to remove and punish him for exercising his First Amendment rights.

44.    Defendants' arrest of Plaintiff prevented him from attending the committee meeting and from providing scheduled public comments on matters of public concern.

**C. Force Used During Arrest and Resulting Injuries**

45.     During the arrest and subsequent escort through City Hall to the transport area, Defendants forcefully pushed, pulled, and marched Plaintiff while he was handcuffed.

46.     Defendants' use of force resulted in Plaintiff feeling immediate and significant pain in his left shoulder and left wrist during this initial arrest and escort.

47.     Within 24 hours of the arrest Plaintiff sought medical care and was diagnosed with sprains/soft-tissue injuries to his left shoulder and left wrist, consistent with the force used during his arrest and transport.

**D. Prolonged Detention and Non-Prosecution**

48.     After arrest in City Hall, Plaintiff was transported to LAPD Central Division and then to the Metropolitan Detention Center.

49.     Upon arrival at the Metropolitan Detention Center, medical staff took Mr. Smith's vital signs. The initial blood pressure reading was elevated—consistent with the stress and physical trauma of being suddenly seized, handcuffed, and detained without warning. Medical staff then manipulated the position of Mr. Smith's arm and retook the measurement, presumably to obtain a lower reading rather than documenting Mr. Smith's actual physiological state at the time of intake.

50.     From there, Plaintiff was held in custody for approximately nine to nine-and-a-half hours, from roughly mid-afternoon until shortly before midnight.

51.     The offense cited was a misdemeanor. Under California law and LAPD policy, persons arrested for such offenses are ordinarily cited and released without prolonged detention, absent documented exceptions.

52.     Plaintiff was not promptly cited and released. Instead, he remained handcuffed, processed, transported, and jailed for hours.

53.     Despite ample opportunity to review the facts, Defendants did not correct the citation, downgrade the matter, or release Plaintiff earlier.

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

54.     Plaintiff was eventually released with a notice to appear.

55.     No criminal complaint was ever filed against Plaintiff, and the City never prosecuted the alleged § 602(j) offense.

56.     The failure to prosecute confirms that Defendants lacked probable cause at the time of arrest and that the arrest was unjustified and retaliatory.

57.     As a direct result of Defendants' conduct, Plaintiff suffered physical injury, emotional distress, and deprivation of his constitutional rights.

**MONELL ALLEGATIONS**

58.     The extensive litigation history against the LAPD demonstrates a pattern and practice of violating the clearly established right to film police, supporting municipal liability on multiple Monell theories: (1) official policy or widespread custom, (2) deliberate indifference through failure to train and supervise, and (3) ratification of unconstitutional conduct by final policymakers.

**I. THE LAPD'S PATTERN AND PRACTICE OF FIRST AMENDMENT VIOLATIONS**

**A. Retaliation Against Individuals Filming Police**

59.     ***Darren "Pete" White v. City of Los Angeles*** (Case No. 17-cv-3306, Filed May 3, 2017; Settled): This case is remarkably parallel to the instant case and demonstrates the LAPD's longstanding pattern of retaliating against individuals who film police. On June 14, 2016, Pete White, founder and Executive Director of the Los Angeles Community Action Network, was videotaping LAPD officers investigating a homeless person on Skid Row. White stood behind police tape approximately 40 feet from the investigation, in full compliance with police instructions. As the investigation concluded, Sergeant Kenny walked away from the scene. White, still behind the police tape and now approximately 80 feet from the investigation site, continued filming. Despite White's complete compliance and non-interference, Sergeant Kenny ordered White's arrest solely for filming police activity. White was handcuffed, arrested, and held in custody for approximately

four hours—in violation of California Penal Code § 853.6's mandatory cite-and-release provision. While detained at Central Station, White overheard LAPD officers and command staff conferring at length about what to charge him with, discussing various inapplicable charges including Los Angeles Municipal Code § 41.18(d) (sitting on sidewalks). He was ultimately charged with Penal Code § 148 (resisting arrest) despite no evidence supporting any criminal violation. No charges were ever filed.

60.     The White complaint specifically alleged that "the LAPD has a custom and practice of interfering with 'citizen journalists' as they record police activity in public places," taking the form of "grabbing photographic equipment to prevent recording, ordering individuals to move to a distance that precludes documentation of police activity, through threats of and actual arrest." The complaint further alleged the City was "on notice that members of the police department were violating the First Amendment rights of 'citizen journalists' who filmed law enforcement activity in public fora, but did nothing to stop this illegal conduct." Critically, the complaint highlighted that California had amended Penal Code § 148 in 2015 to add subsection (g), explicitly providing that photographing or recording public officers in public places does not constitute obstruction, reasonable suspicion for detention, or probable cause for arrest. The City's settlement of this case constitutes an acknowledgment that White's constitutional rights were violated and demonstrates the City was on notice—years before the instant case—of systemic LAPD practices of retaliating against individuals for filming police.

61.     ***Tezcacoatl  v. City of Los Angeles*** (2026): A protester sued the LAPD alleging an officer shot him in the face with a foam projectile specifically while he was filming an anti-ICE protest. The lawsuit claims the officer intentionally targeted him for filming, despite his compliance with dispersal orders. This

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

demonstrates direct retaliation for exercising First Amendment rights to document police activity.

62. ***Singh v. City of Los Angeles*** 2:22-cv-01306-GW-AJR : Documentary filmmaker reached a settlement with the City after alleging an LAPD officer assaulted him while he was recording a 2021 protest. The case settled abruptly after the first day of trial, suggesting strong evidence of liability.

63. ***Roberto Cortez seizure***[1] In September 2022, nineteen-year-old Roberto Cortez was volunteering at an LAPD-sponsored community movie night at Harbor City Community Park—an event co-sponsored by LAPD as part of the Summer Night Lights program designed to build community trust. When officers detained Cortez's friend, Cortez began recording with his cellphone. Without warning, an officer lunged at Cortez, took him to the ground, and arrested him. Cortez was charged with resisting arrest and his bail was set at $25,000. Cortez later stated that he received no warning before being seized: "Without giving me warning at all he just started detaining me. I was still asking, 'Why am I being detained?' And they still never told me." The president of the Harbor City Neighborhood Council, who witnessed the incident, recognized Cortez as a regular volunteer and stated: "They're really great kids, they don't do anything wrong." The parallels to Mr. Smith's arrest are striking: in both cases, LAPD officers responded to lawful filming by immediately seizing the person recording, without warning, without any opportunity to comply with a command, and without probable cause. This pattern demonstrates that the City has failed to train officers that filming

---

[1] Richard Winton, *A Teen Filmed LAPD Officers Arresting His Friend. Then He Ended Up in Handcuffs*, L.A. Times (Sept. 9, 2022), https://www.latimes.com/california/story/2022-09-06/teen-filmed-lapd-officers-arresting-friend-ended-up-in-handcuffs; *'It Went Too Far': Harbor City Teen Upset About Violent Detention by LAPD After Filming Another Arrest*, KTLA (Sept. 8, 2022), https://ktla.com/news/it-went-too-far-harbor-city-teen-violently-detained-by-lapd-after-filming-another-arrest/. ↵

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

police is constitutionally protected activity and that the act of recording does not provide a basis for arrest.

64. ***Marshall Woodruff***: LAPD's pattern of targeting individuals who document police activity extends beyond arrests to the use of injurious force. On June 14, 2025—just one month after Mr. Smith's arrest—photographer Marshall Woodruff was documenting protests near City Hall during a "No Kings Day" rally when LAPD officers began firing less-lethal munitions into the crowd. Woodruff was first struck in the arm. Moments later, a second round hit his face, fracturing his cheek and tearing open his right eye. Woodruff required five hours of surgery, and doctors remain uncertain how much vision he will regain. This was at least the fourth incident in which a photographer was injured by less-lethal weapons while covering Los Angeles protests that month alone. The City's failure to train and supervise officers on the constitutional rights of individuals who film police has resulted in a pattern of escalating violence against those engaged in protected First Amendment activity.

**B. Systematic Targeting of Journalists and Documentarians**

65. ***Los Angeles Press Club v. City of Los Angeles*** (2025): In June 2025, the Los Angeles Press Club filed a major lawsuit alleging a "brazen refusal to abide by the Constitution" and California law (SB 98). The complaint documented at least 35 instances between June and July 2025 where LAPD officers allegedly targeted journalists with kinetic impact projectiles (rubber bullets), tear gas, and physical force during protests. A federal judge subsequently issued a preliminary injunction barring the LAPD from using excessive force against credentialed media, finding a likelihood of success on the merits of the First Amendment claims. This case demonstrates not only the widespread nature of the violations but also judicial recognition that LAPD practices violate clearly established law

66. ***Lexis-Olivier Ray v. City of Los Angeles* (2025)**: Journalist Lexis-Olivier Ray filed a federal civil rights lawsuit in 2025 alleging that LAPD officials

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

have "routinely interfered" with his ability to document police activities, specifically during sweeps of homeless encampments. The complaint alleges a systematic practice of preventing journalists from recording police actions involving vulnerable populations, expanding the pattern beyond protest contexts.

67. ***Tina-Desiree Berg v. City of Los Angeles*** (Filed February 2, 2023; Trial April 2026): Independent journalist Tina-Desiree Berg filed a federal lawsuit after being repeatedly shoved and struck in the head by an LAPD officer while documenting reproductive rights protests in Los Angeles on June 24, 2022. Berg showed the officer her press credentials and informed him that journalists were supposed to be given space to film arrests; the officer replied, "I don't care." The complaint accuses defendants of violating California Penal Code § 148(g), which bars law enforcement from intentionally assaulting or obstructing journalists at protests and exempts members of the press from dispersal orders. This case demonstrates not only officer-level violations but also a willful disregard for both constitutional protections and state statutory safeguards.

68. ***Peltz & Gallagher v. City of Los Angeles*** (August 2025 Settlement: $500,000): Two journalists reached a $500,000 settlement with the City after being arrested in 2021 while filming a police raid on a homeless encampment. The lawsuit alleged their arrests were part of a "pattern of LAPD officers obstructing, targeting, and retaliating against" people documenting police actions. This substantial settlement amount reflects both the strength of the claims and the City's awareness of systemic problems.

**C. Internal Retaliation and Systemic Policy Failures**

69. ***Cortez v. City of Los Angeles*** (2025): An LAPD Commander sued for whistleblower retaliation, alleging she was demoted after raising concerns that officers were intentionally failing to activate body-worn cameras during uses of force. This lawsuit demonstrates that the problem is not isolated to a few rogue

officers but involves systemic failures in accountability mechanisms and retaliation against those who attempt to expose such failures.

70. **Capt. Johnny Smith Lawsuit** (2022): A separate lawsuit alleged retaliation against an officer who complained about non-compliance with body camera policies and wrongful use of beanbag rounds against media and protesters. This further evidences a culture of suppressing internal criticism regarding First Amendment violations and use of force policies.

### D. Long-Standing Historical Pattern

71. *Crespo v. City of Los Angeles* (2000 Settlement): Twenty-five years ago, the LAPD agreed to a settlement recognizing journalists' rights to cover protests. The 2025 Los Angeles Press Club complaint specifically alleged the LAPD has a "long and entrenched history" of using force to obstruct freedom of the press, showing a consistent pattern spanning decades. The recurrence of nearly identical violations over a 25-year period demonstrates that prior notice, litigation, and settlements have failed to change LAPD practices, establishing deliberate indifference.

## II. EVIDENCE OF MUNICIPAL LIABILITY

### A. Acknowledgment of Systemic Problems

72. Multiple federal judges have found sufficient evidence to issue preliminary injunctions and allow contempt proceedings against the LAPD, demonstrating that these are not isolated incidents but recognized patterns of unconstitutional conduct. The preliminary injunction in the Los Angeles Press Club case and the contempt motion in Black Lives Matter vs. City of Los Angeles –both issued within the last six months—demonstrate both the severity and persistence of LAPD violations despite court intervention. When a municipality continues to violate constitutional rights despite judicial orders, it establishes the deliberate indifference required for Monell liability.

### B. Failure to Train, Supervise, and Discipline

73.     The whistleblower retaliation cases (Cortez and Smith) reveal systemic failures in training, supervision, and accountability. When an LAPD Commander is demoted for reporting that officers systematically fail to activate body cameras during uses of force, and when officers who complain about constitutional violations face retaliation rather than support, it demonstrates that the municipality has chosen a policy of protecting officers who violate constitutional rights rather than protecting the public.

74.     The Pete White case is particularly probative on this issue. The complaint specifically alleged: "The City's failure to enact, implement and train regarding lawful policies on this fundamental right is all the more remarkable because the California Legislature amended Penal Code § 148 in 2015 to add subsection '(g)' for the stated legislative intent to provide that it is not, standing alone, sufficient to constitute obstruction of an officer or 'reasonable suspicion to detain the person or probable cause to arrest the person' for the act of photographing or taping a 'public officer, peace officer, or executive officer, while the officer is in a public place.'" The complaint further noted that the legislative history cited multiple Ninth Circuit decisions upholding the First Amendment right to record public officers, including *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). Despite this clear legal framework dating back decades, and a specific state statute enacted in 2015 (before White's 2016 arrest), the LAPD failed to train officers and continued the same unconstitutional practices through 2025 in the instant case.

75.     The need for training on the clearly established right to film police is "so obvious" that failure to provide it constitutes deliberate indifference. The right has been clearly established in the Ninth Circuit since 1995, was reinforced by California Penal Code § 148(g) in 2015, and strengthened by SB 98 in 2024. Yet LAPD officers continue to arrest, assault, and retaliate against those who film them, using the exact same pretextual charges (trespass in the instant case; resisting

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

arrest in White) that have been consistently rejected by courts and resulted in substantial settlements.

76.	The evidence establishes Monell liability under multiple theories. The sheer volume of litigation, the substantial financial exposure, the repeated judicial intervention, the whistleblower retaliation cases, the City's 2017 settlement of the nearly identical White case, and the 25-year history of similar violations all demonstrate that the City of Los Angeles maintains an official policy or custom of retaliating against individuals who film police officers. The City's failure to train, supervise, and discipline officers despite clear and repeated notice of constitutional violations—including specific statutory notice through Penal Code § 148(g) and multiple Ninth Circuit precedents—constitutes deliberate indifference.

77.	The instant case is not an isolated incident but part of a well-documented, decades-long pattern of LAPD violations of the First Amendment right to record police. The fact that this case occurred nine years after the City settled *White* for virtually identical conduct—and involved the exact same retaliatory arrest, similar pretextual charges, and prolonged detention—demonstrates that the City has chosen to maintain its unconstitutional practices despite repeated notice, litigation, and substantial financial liability. The City is liable under Monell for maintaining this unconstitutional custom and for its deliberate indifference to the clearly established rights of its residents.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

78.	Plaintiff timely filed a claim with the City under California Government Code § 910 et seq. on September 11, 2025.

79.	To the extent any further administrative exhaustion is required, it has been satisfied, excused, or is deemed exhausted.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

**Violation of First Amendment (42 U.S.C. § 1983); Cal. Const. Art. I, § 2(Right to Record Police; Right to Attend and Provide Comment at Public Meetings)**

Against All Defendants

80.	Plaintiff realleges and incorporates by reference paragraphs 1–76 as though fully set forth here.

81.	Plaintiff was engaged in protected First Amendment activity by openly recording police in a public forum and by attending and preparing to speak at a public City Council committee meeting.

82.	Defendants arrested Plaintiff and thereby prohibited him from continuing to record police, from remaining in City Hall for lawful public business, and from attending and speaking at the public meeting.

83.	Defendants' actions were not narrowly tailored to any legitimate governmental interest and were unsupported by probable cause or reasonable suspicion.

84.	Defendants knew or should have known that arresting a person for recording police in a public place violated clearly established First Amendment rights, especially in light of Penal Code § 148(g).

85.	As a direct and proximate result, Plaintiff suffered constitutional injury and damages.

**SECOND CAUSE OF ACTION**

**First Amendment Retaliation (42 U.S.C. § 1983); Cal. Const. Art. I, § 2**

Against All Defendants

86.	Plaintiff realleges and incorporates paragraphs 1–76.

87.	Plaintiff engaged in protected activity by filming police and by attending and preparing to comment at a public meeting.

88.	Defendants took adverse action against Plaintiff by arresting him, citing him for trespass, and detaining him for hours.

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

17

89.    Plaintiff's protected activity was a substantial or motivating factor for Defendants' actions, as shown by the immediacy of the arrest following Plaintiff's filming and the absence of any legitimate basis for the trespass charge.

90.    Defendants' actions would chill a person of ordinary firmness from continuing to record police or attend public meetings.

91.    As a direct and proximate result, Plaintiff suffered constitutional injury and damages.

### THIRD CAUSE OF ACTION

### Unlawful Seizure / False Arrest in Violation of the Fourth Amendment (42 U.S.C. § 1983); Cal. Const. Art. I, § 7

### Against All Defendants

92.    Plaintiff realleges and incorporates paragraphs 1–76.

93.    Defendants arrested and seized Plaintiff without a warrant.

94.    Defendants lacked probable cause to believe Plaintiff violated Penal Code § 602(j) or any other law.

95.    Plaintiff's momentary camera proximity—approximately half a second—did not and could not constitute obstruction, threat, or trespass, nor did it interfere with any lawful police duty.

96.    Defendants' seizure of Plaintiff was therefore unreasonable under the Fourth Amendment.

97.    As a direct and proximate result, Plaintiff suffered constitutional injury and damages.

### FOURTH CAUSE OF ACTION

### Excessive Force in Violation of the Fourth Amendment (42 U.S.C. § 1983)

### Against Individual Defendants and DOES

98.    Plaintiff realleges and incorporates paragraphs 1–76.

99.    Plaintiff was nonthreatening, nonresistant, and compliant during the arrest.

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

100. Defendants nonetheless used unnecessary and excessive force while handcuffing, pushing, pulling, and escorting Plaintiff, causing immediate shoulder and wrist pain, bruising, and subsequent diagnosed sprains.

101. The force used was objectively unreasonable under the circumstances.

102. As a direct and proximate result, Plaintiff suffered injury and damages.

## FIFTH CAUSE OF ACTION

### Violation of Fourteenth Amendment Due Process / Liberty Interest

### (42 U.S.C. § 1983)

Against All Defendants

103. Plaintiff realleges and incorporates paragraphs 1–76.

104. Plaintiff had a liberty interest in being free from unlawful arrest and prolonged detention without justification.

105. Plaintiff also had a state-created liberty interest in prompt cite-and-release for a misdemeanor absent qualifying exceptions.

106. Defendants detained Plaintiff for approximately nine to nine-and-a-half hours on a misdemeanor citation without necessity, documentation, or lawful basis.

107. The prolonged detention was punitive, unreasonable, and deprived Plaintiff of liberty without due process of law.

108. As a direct and proximate result, Plaintiff suffered constitutional injury and damages.

## SIXTH CAUSE OF ACTION

### Violation of Cal. Civ. Code § 52.1 (Bane Act)

Against All Defendants

109. Plaintiff realleges and incorporates paragraphs 1–107.

110. Defendants interfered with and attempted to interfere with Plaintiff's federal and state constitutional rights— including his rights to record police, to

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

attend and speak at public meetings, to be free from unreasonable seizure, and to be free from excessive force—by threats, intimidation, coercion, and physical force.

111.   Defendants' conduct was intentional and a substantial factor in causing Plaintiff harm.

112.   Plaintiff is entitled to damages, penalties, and attorneys' fees under Cal. Civ. Code § 52.1.

## SEVENTH CAUSE OF ACTION

### False Imprisonment (State Law)

Against All Defendants

113.   Plaintiff realleges and incorporates paragraphs 1–76.

114.   Defendants intentionally confined Plaintiff by arresting, handcuffing, transporting, and jailing him.

115.   Plaintiff did not consent to the confinement.

116.   The confinement was without lawful privilege because Defendants lacked probable cause.

117.   Defendants' conduct caused Plaintiff harm.

## EIGHTH CAUSE OF ACTION

### False Arrest Without a Warrant by Peace Officer (State Law)

Against All Defendants

118.   Plaintiff realleges and incorporates paragraphs 1–116.

119.   Defendants arrested Plaintiff without a warrant and without probable cause, in substantial part to retaliate against him for protected First Amendment activity.

120.   Plaintiff was harmed by the unlawful arrest and resulting detention.

## NINTH CAUSE OF ACTION

### Battery (State Law)

Against Individual Defendants and DOES

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

121. Plaintiff realleges and incorporates paragraphs 1–76.

122. Defendants intentionally and unlawfully used force against Plaintiff beyond that reasonably necessary, including forceful pushing, pulling, and handcuffing, causing injury.

123. Plaintiff did not consent to the force, and Defendants' conduct was a substantial factor in causing harm.

## TENTH CAUSE OF ACTION

### Assault (State Law)

Against Individual Defendants and DOES

124. Plaintiff realleges and incorporates paragraphs 1–76.

125. The defendant committed an act that by its nature would directly and probably result in the application of force to someone else.

126. The defendant possessed the immediate ability to apply force

127. The defendant was aware of facts that would lead a reasonable person to realize their act would directly and probably result in force.

128. Plaintiff did not consent to the force, and Defendants' conduct was a substantial factor in causing harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

A. A declaration that Defendants' policy, practice, or custom of obstructing or punishing members of the public for recording police activity in public fora is unlawful under the First Amendment;

B. A declaration that Plaintiff's arrest and prolonged detention for filming police in City Hall and attempting to attend a public meeting were unlawful under the First, Fourth, and Fourteenth Amendments;

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

21

C. Preliminary and permanent injunctive relief requiring the City and LAPD to adopt and enforce lawful policies and training protecting the right to record police and attend public meetings without retaliation;

D. Compensatory damages in an amount to be proven at trial;

E. Statutory damages and civil penalties as authorized by state law;

F. Punitive damages against the individual Defendants;

G. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1; and

H. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: 2/16/2026

Respectfully submitted,


Law Office of Weston Rowland


By: _____

Weston Rowland

Attorneys for Plaintiff Adam Burton Smith